Good morning. Tanya Morrow, representing Mr. Willis. May it please the Court. I believe Mr. Willis should be resentenced on the supervisory lease violation in this case, and that is based on our argument that the district court failed to calculate the guideline and actually imposed the supervisory lease violation based on an incorrectly calculated guideline range. Actually, the correct guideline range would have had a high end of 27 months, which is what the parties were actually in agreement with and recommending. However, for some reason, unstated in the record, it appeared that the probation department, just within days of the sentencing hearing and after Mr. Willis submitted his sentencing memorandum, decided that the guideline range was based on a Grade A violation. And as we've argued, the offense conduct that the Court found and which was alleged were State violations, none of which would classify as a Grade A violation. The only one that potentially comes close, and that is the government has argued, is the unlawful use of a weapon, State charge. What we've argued is, is that although this Court has found that the second subsection of Section 1 of that statute, which is 166.220, is categorically a crime of violence, that subsection deals with discharge of a firearm. This Court has not ruled, and especially not since the United States Supreme Court in Discamps, I'm hoping I'm pronouncing that correctly, that subsection 1 is a categorical crime of violence. We haven't addressed that, but we're here on plain error, right? It's plain error review. So we would have to find that the district court's determination of that 166.2201A, right, that it was a crime of violence, we would have to say that was a plain error. So maybe you can explain why it would be a plain error for the district court to determine that the attempt to use unlawfully against another dangerous or deadly weapon is not a crime of violence as defined in the sentencing guidelines. Well, this Court has, on numerous occasions, found that a failure to calculate the appropriate guideline range is plain error, because it begins the process. If that is a crime of violence, then the district court's calculations were correct, right? That's true. So my question is, given this is an issue of first impression, the Ninth Circuit hasn't ruled on it, why did the district court plainly err in determining implicitly that this crime is a crime of violence as defined in the sentencing guidelines? Well, we've argued the camps came down before the actual sentence was imposed. So that's the only argument I can make for that. What I'm arguing here is that this Court can recognize a plain error when a new authority comes down that should affect the case while it's still not final, it's still on direct review. I guess I'm not understanding, or maybe I'm not asking my question correctly. We've never said that the first prong, now I understand Terry Crespo only dealt with part two of the state offense, but we've never said that the first part of that state offense is not a crime of violence. So the district court could have determined that that was a crime of violence, therefore that he was convicted of a grade A violation. Is that wrong? But the district court didn't. I mean, I guess. The district court didn't say so implicitly since it found a grade A violation, it could have been relying on the first prong. And that's plain error because. Why is that plain error unless it's a crime of violence? Because DeCamps applies and it the subsection A is indivisible and overbroad. Why does DeCamps apply at all? Under the guideline, the grade of violation does not depend on the conduct that is the subject of the criminal charge or of which the defendant is convicted. Rather, the grade of violation is to be based on the defendant's actual conduct. So in this case, he's looking at the conduct which you would not be able to look at under Taylor DeCamp. You only look at the category and the elements. But if the guidelines say on revocation, you can look at the conduct. And looking at the conduct, the district court concluded that it fit within the grade A violation definition. Why wouldn't that be sufficient? Because I understand that this is not a typical case where we're looking at a state conviction. We're actually, the judge is actually making factual findings about whether a state law violation occurred. But in this. It has to make a finding that it's a crime of violence. Right, that's exactly the case. And so as a result, if you've got a provision that's indivisible and overbroad. She can't make, I believe she can't make a distinction between the two. That's our position, that it is not categorically a crime of violence. She's unable, the judges then are unable to make a distinction as to that state law violation. Why can't, looking at the conduct, the district court determine that it would be a crime of violence? I understand your point. It's as if the court is actually acting as prosecutor and judge. And therefore saying that I'm using the first section of subsection A. I think we still are stuck with the categorical test. And because it's overbroad, we can't use that statute and that provision as a potential predicate for a crime of violence. The guidelines say look at the conduct. If that's true, then that would be contrary to Taylor and DeKalb. I- Isn't that right? So are the guidelines overridden by DeKalb or? I think we still have the definition, the same definition of crime of violence that applies when the court is imposing a ruling on whether, on the character of the offense conduct, whether it's grade A or not. Well, I just thought, I thought that we, in this particular context when you're dealing with a revocation sentence that, and you're trying to determine whether conduct rises to the level of a crime of violence, you use, you kind of use the Taylor, the Taylor analysis, but in a different kind of way. I understand that. It's not the same fit we're normally used to applying Taylor to, and that is a state law conviction. But I still don't understand. You haven't really answered for me Judge Acuda's question about why this isn't, even if you look at the conduct and you're on plain air review, why this, I'm not quite following you. If you take each part of the statute, of the state statute, it looks like it qualifies. His conduct qualifies as a crime of violence. He used a gun, you know, to. Use threatening and brandishing a gun. That's true. That's true. That's absolutely true, that he used, he used the weapon and made a threatening comment. So he could have been prosecuted in state court for unlawful use of a weapon. But it's. Unlawful use of weapon does not qualify as a crime of violence. You haven't, you haven't explained this. What I'm saying is because of the definition for the grade A violation has to be a crime of violence. When you, I still, we still apply the whole Taylor analysis and that subsection is indivisible and over broad because it's got, it's got conduct that wouldn't qualify as a crime of violence, which is, which is the possession of the weapon. So I'll remain. You can save your time for rebuttal. Excuse me. May it please the court. Kelly Zuzman appearing on behalf of the United States. Your Honor, on the question of the supervised release violation. I've got two answers to the allegation that this offense conduct that Mr. Willis committed was not a crime of violence. The first is the district judge couldn't have plainly erred relying upon Terry Crespo. The supervised release violation report referred to unlawful use of a weapon and it's been well established since 2004 out of a case arising from this district that that is a crime of violence was pretty specific. That was looking at the second part, discharging a weapon towards a building or at a person that's not the same conduct as what the defendant here. It's a different section of the statute and it's a different conduct. So I didn't understand how Terry Crespo could possibly provide any guidance on whether the conduct or the offense that we think applies to his crime or conduct would be a crime of violence. I don't understand that. And if I may, Your Honor, the supervised release violation report didn't specify a particular subsection. But I agree with you that if you look at the Oregon statute, the subsection that more precisely applies to what Mr. Willis did is subsection A. If doing some additional research on subsection A, which makes it a crime under Oregon law to attempt to use unlawfully against another, carries or possesses with the intent to use unlawfully against another, any dangerous or deadly weapon, that aligns pretty neatly with another case from this circuit. And that's United States versus Genin. That was 596 Fed 3rd 594. It was a Washington second degree assault with a deadly weapon in which this court held categorically constituted a crime of violence. And I think if you take a look at the elements of that Washington statute, they align fairly neatly with 1 sub A. So let me ask you this. When we're talking about the definition of crime of violence under the sentencing guidelines, 4B1.2, they have two different sections. One has an element, the use, attempted use or threatened use of physical force. And second, the catch-all otherwise involves conduct that presents a serious potential risk of physical injury. Now we know that that second prong is currently on review by the Supreme Court. And they're focusing in Johnson. So two questions. First, does the state offense that his conduct resembles fall within the first or the second definition? And if it's the second definition, even under plain error review, would we have to wait for the Supreme Court? And I think it falls far more neatly in the first definition, the threatened use of physical force. And if it's under that subsection, then we're not even concerned about the residual clause and what the Supreme Court may or may not do based upon the supplemental briefing that's been ordered. And if I may, I think when this issue first came up, and again, none of this was brought to Judge Brown's attention. But when it first came up on appeal, I went very quickly to Terry Crespo and perhaps too quickly. If we go back to 7B1.1, the suggestion has been raised that this has to be a crime of violence to constitute a Class A violation. And that's not entirely accurate. 7B1.1A1 refers to the first clause, Sub A, refers to a crime of violence or a controlled substance offense. But if you drop down to Sub B, a Grade A violation is also any other federal, state, or local offense punishable by a term of imprisonment exceeding 20 years. Now, Mr. Willis, when he admitted the violations, and there were a whole litany of them. There was a long list that was prepared by the probation office. He admitted that he was a felon in possession of a firearm. That's at GSER 175 and 178. That's what he was charged with in this case. His felon in possession of a firearm charge, which was 922G, coupled with a 924E enhancement, carried a 15 year minimum with a life maximum. So therefore, an alternative basis to affirm the district court's finding that this was a Grade A violation is the fact that Mr. Willis engaged in conduct that constituted another federal offense, that is, felon in possession of a firearm, carrying a sentence that was far in excess, a maximum punishable sentence in excess of 20 years. This argument wasn't made to the district court, but I don't think you made it in your briefs either. Is that correct? That's correct. But again, in part because it was raised late and the challenge to Terry Crespo wasn't raised until the reply brief. But we're relying upon the principle that Judge Brown can be affirmed on any basis supported by the record, and this is an alternative viable basis to get to the Grade A violation. I initially thought when I looked, when I very first opened the briefs in this case, I thought that's what actually had happened here. And it turned out, the way the case was argued, that everybody was relying on the State statute. Right. Right. But again, like I say, I think we jumped too quickly. Maybe I jumped too quickly to Terry Crespo. But in Judge Brown's defense, the Grade A violation doesn't necessarily depend upon a State conviction constituting a crime of violence. The Federal conviction, which Mr. Willis admitted to, also constitutes a Grade A violation. Can you explain, clarify, because on the issue of DeKalb, the State statute tailored to DeKalb, when the guideline is talking about looking at conduct, which is not something we're supposed to do under the modified or the categorical or the modified categorical, how does it play? And Judge Payette said it's sort of a hybrid, apparently. I've not encountered that. So I'm trying to understand, given the plain language of the guideline, why Judge Brown couldn't, on a revocation sentence, look to the crime as suggested and go straight to the conduct and conclude it fits within crime of violence. What's your understanding of how it applies? And again, there's not a lot of case authority interpreting 7b1.1. I mean, the plain language of the guideline does in fact refer to conduct. That's a material difference between this case and the ACCA cases that do involve the stricter categorical, modified categorical. It's our position that what Mr. Willis actually did was categorically a crime of violence, and so therefore, discounts never comes into the mix. And you get there either by analogy to Gennon or the alternative route of saying this also constituted the federal offense punishable by more than 20 years. Your Honors, the other thing that I wanted to point out that we didn't in our brief that I think affirms what Judge Brown did here, and that is that even if you were to conclude that the court plainly erred in not foreseeing that this was not a grade A violation as suggested by the probation office, is that Judge Brown treated this sentence as a package. What she said at GSR 217 was, what's driving my analysis here is the combination of the 60 months and the 180 months. And she said, Mr. Willis, you've earned the five years on the supervised release violation. Now, Judge Brown, and Chapter 7, as we know, it's not even a guideline. It's a policy statement. Judge Brown clearly, if you look at her explanation for her ruling, relied upon the statutory directive, that she select a sentence that was sufficient but no greater than necessary to address all of the conduct that Mr. Willis engaged in that night. She rejected the government's suggestion that she do a high end on the ACC offense. She gave him the mandatory minimum of 180, but to accurately reflect all of the conduct he had engaged in since his supervised release began, which was just a two-month period. But in addition to the offense, which forms the basis for this conviction, we know that he had another gun incident with a girlfriend, with another convenience store clerk, and Judge Brown considered that significant, and particularly significant in light of the fact that his prior federal sentence, which was handled by Judge Redden, was one in which Judge Redden granted a significant downward variance. So given all of those factors, we would urge this court not to exercise discretion to recognize plain error in this case, because Judge Brown's ultimate conclusion as to what came out to be a 20-year sentence was one that reflected all of the factors that she was supposed to consider. Are there any, I want to be sure I answer any questions you may have about the motion to suppress. If there are no questions, then the government would submit. That's fine. Thank you. The new argument concerning ACC is addressed by way of the Judge Brown made specific comments that she was treating the change of plea on the supervised release very carefully. So because his plea to the felon in possession of ACC was a conditional plea. And when she ultimately made the findings concerning what it was she was finding for the offense, supervised release violation, she specifically states, State law offenses of unauthorized use of a weapon for being a felon in possession of a firearm, for possessing a loaded firearm in public, et cetera, et cetera. That's set out and quoted at page 6. So she was being extremely careful with regard to not using his conditional plea to the felon in possession for purposes of the supervised release. And she also says that something to those regards in the change of plea hearing at the government's supplemental record at 148. With regard to her treating this as a package with regard to whether she might have done a different sentence, I believe the record is pretty clear on that as well. Not only at the change of plea hearing did she mention that this case, she anticipated that there were going to be arguments that a 15-year sentence was sufficient for both violations. And that's also at the government's supplemental record at 147. But she also specifically asked the prosecutor why the sentence should be, the supervised of the guideline range imposed, that could be imposed on the felon in possession. I think in context, it's clear that she agreed that he should be sanctioned for the trust violation, but she was concerned with over-incarceration. That's why she only gave him the 180 months. And if, in fact, she knew that the guideline range, the max, was the 27 months both parties were recommending, she probably would have just, I think it's likely she would have imposed that. And I guess I'm out of my time at this time. Thank you. Thank you.
judges: Fisher, Paez, Ikuta